Filed 6/27/24  P. v. Francis CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CARLOS RONTEZ FRANCIS, JR.<br><br>    Defendant and Appellant. | A168321<br><br>(Contra Costa County<br>Super. Ct. No. 05001011394) |

Carlos Francis appeals from an order denying his petition to vacate two convictions for attempted murder that he sustained in 2012, and to resentence him for his other 2012 offenses.  (Pen. Code, § 1172.6.)[1]  The trial court denied the petition after issuing an order to show cause, holding a full evidentiary hearing, and concluding that the People carried their burden of proving Francis is guilty of the attempted murders under current law.  While the trial court likely erred in concluding that Francis stated a prima facie case for relief, it reached the correct conclusion after issuing an order to show

---

    [1] Statutory references are to the Penal Code.  Francis filed his resentencing petition under former section 1170.95, which was amended and renumbered as section 1172.6 without substantive change.  (*People v. Vargas* (2022) 84 Cal.App.5th 943, 947, fn. 2 (*Vargas*); see Stats. 2022, ch. 58, § 10.)

1

cause, namely that Francis is not entitled to resentencing under section 1172.6.  Accordingly, we affirm.

## BACKGROUND

### *The 2012 Convictions*

In 2012, Francis and his codefendant, Miles, were jointly tried on multiple charges arising out of two separate gunshot attacks committed on April 5 and May 27, 2010.  The People alleged that both sets of crimes were committed for the benefit of the "Deep C" criminal street gang.  (§ 186.22, subds. (b)(1), (b)(4).)  This appeal pertains exclusively to the April 2010 incident, and we limit our discussion accordingly.

Francis and Miles were charged by amended information with committing the following offenses on April 5, 2010:  attempted murder of R. Boyd (§§ 187, 664, count 1); attempted murder of S. Jackson (§§ 187, 664, count 2); shooting at an occupied motor vehicle (§ 246, count 3); and active participation in a criminal street gang (§ 186.22, subd. (a), count 7).  As to the first three charges, the prosecution alleged distinct gun use enhancements for each defendant.

For committing the attempted murder of Boyd, Francis was charged with enhancements for personally inflicting great bodily injury (§ 12022.7, subd. (a)) and for "personally" using, and "intentionally and personally" discharging a firearm, causing great bodily injury (§ 12022.53, subd (c)–(d)).  The prosecution did not allege that Miles personally inflicted great bodily injury on Boyd, or that Miles personally discharged a firearm.  Instead, they alleged a section 12022.53 gun enhancement applied to Miles because he was criminally responsible for the use and intentional discharge of a firearm proximately causing great bodily injury and committed the attempted murder

2

for the benefit of a criminal street gang within the meaning of section 186.22 (§ 12022.53, subds. (c), (d), (e)(1)).

For attempting to murder Jackson, Francis was not charged with an enhancement for personally inflicting great bodily injury, but the prosecution did allege that Francis personally and intentionally used and discharged a firearm causing her great bodily injury (§ 12022.53, subds. (c)–(d)). As to this attempted murder, Miles was again charged with a section 12022.53 firearm enhancement based on his intent to benefit a street gang (*id*. at subd. (e)(1)). So too for the charge of shooting at an occupied motor vehicle; the prosecution alleged Francis personally used and intentionally discharged a firearm causing great bodily injury to Boyd and Jackson, and Miles was charged with a gun enhancement for the use and intentional discharge of a firearm, proximately causing great bodily injury, but there was no allegation that Miles personally used a firearm.

Jury instruction pertaining to the attempted murder charges included CALJIC No. 8.66, which defined the elements of attempted murder to include "express malice aforethought, namely, a specific intent to kill," and CALJIC No. 3.02, which set forth requirements for finding a defendant guilty of attempted murder as an aider and abettor under the natural and probable consequences doctrine. Regarding sentence enhancements requiring proof of great bodily injury, the jury was repeatedly instructed that great bodily injury means "significant or substantial physical injury," and does not include "trivial," "minor," or "moderate" harm.

The jury found Francis guilty of both attempted murders, shooting at an occupied vehicle, and the gang participation offense, which was described in the verdict as street terrorism. The jury found true special allegations that in committing the attempted murder of Boyd, Francis personally

3

inflicted great bodily injury, and personally "used, and intentionally and personally discharged a handgun," causing great bodily injury. The jury also found that in committing the offense of shooting at an occupied vehicle, Francis personally "used, and intentionally and personally discharged a handgun," thereby causing great bodily injury to Boyd and/or Jackson. In closing arguments, almost no mention was made of Jackson's injury being serious, and the jury did not find that Francis personally discharged a handgun causing great bodily injury to her. Nor did it find that Francis committed his shooting offenses for the benefit of a gang.

The jury found Miles not guilty of attempted murder, and not guilty of shooting at an occupied vehicle, and they failed to reach a verdict as to whether he committed the gang participation offense.

Francis was sentenced to an aggregate prison term of 35 years to life, which was reduced on appeal to 34 years and eight months to life. (*People v. Francis* (Jan. 20, 2017, A137765) [nonpub. opn.].)

***The Resentencing Petition***

In May 2022, Francis filed his petition for resentencing. Acting in propria persona and checking every box on the form petition, Francis declared that: a complaint, information or indictment filed against him permitted the prosecutor to proceed under a theory of murder under which malice was imputed solely on the basis of his participation in a crime or of "attempted murder under the natural and probable consequences doctrine"; he was convicted of murder, attempted murder or manslaughter following a trial or pursuant to a plea in lieu of a trial where he could have been convicted of murder or attempted murder; and he could not presently be convicted of murder or attempted murder due to changes to section 188 and

4

189 that went into effect January 1, 2019, pursuant to the enactment of Senate Bill No. 1437.

The People opposed the petition on the ground that Francis is ineligible for resentencing as a matter of law. They argued that the record of Francis's 2012 convictions shows that he was the actual shooter and was convicted of attempted murder as the actual attempted killer of Boyd and Jackson. The People reasoned that the jury's findings that Francis personally used a firearm and personally inflicted great bodily injury establish that he "indisputably acted as the shooter as a matter of law." Consequently, the People requested that the court deny Francis's petition for failure to state a prima face case.

With the assistance of appointed counsel, Francis filed a reply brief in support of his petition. Disputing that he was ineligible for resentencing, Francis argued that at the prima facie stage the court was required to accept the petition allegations as true because they were not contradicted by his record of conviction. Francis relied on the fact that the jury at his 2012 trial had been instructed regarding aider and abettor liability and the natural and probable consequences doctrine, contending it was conceivable the jury relied on these principles to convict him of the attempted murders without finding he was the " 'actual killer' " who attempted to kill Boyd and Jackson.

### The Prima Facie Case Finding

On November 15, 2022, the trial court issued an order to show cause, finding that the petition allegations were sufficient to make a prima facie case of entitlement to relief because they were not contradicted by the "very limited record of conviction." The court reasoned that the information charged Francis with attempted murder in a generic manner that permitted the prosecution to proceed under the natural and probable consequences

5

doctrine; the jury instructions permitted the jury to find Francis guilty of attempted murder if they believed that murder was a natural and probable consequence of assault with a firearm or shooting at an occupied dwelling; and the natural and probable consequences doctrine had been rendered invalid by amendments to section 188 and 189.

In reaching its conclusion, the court acknowledged the record of conviction does show Francis was the actual shooter because the jury made special findings that he personally inflicted great bodily injury and personally used a firearm causing great bodily injury. But the court concluded those findings were not dispositive because they did not establish that as a matter of law Francis harbored the specific intent to kill when he shot the victims. Thus, the court found, "[g]iven the fact that the jury was instructed on the natural and probable consequences doctrine, the defendant has made a prima facie showing that he is eligible for relief."

### The Order Denying Francis's Petition

At an April 2023 hearing on the order to show cause, the People submitted evidence of the court file and trial transcript pertaining to Francis's 2012 criminal case. The court heard argument and took the matter under submission. On June 7, 2023, the court issued an order denying Francis's petition for resentencing.

#### Factual Findings

The court limited its consideration of the trial record to evidence that pertained to the April 2010 shooting incident. It ruled further that it would not consider (1) evidence that had been introduced only against Miles or (2) evidence of "gang activity" that was no longer admissible under current law, citing *People v. Sanchez* (2016) 63 Cal.4th 665. From the evidence, the court made the following findings of fact.

6

The shooting attack occurred in the city of San Pablo on April 5, 2010, at around 11:00 a.m. At the time, Jackson was pregnant with Boyd's child and Boyd was driving Jackson to her home. While stopped at an intersection, Boyd noticed a truck driving in the wrong lane and pulling up alongside his car. Francis was in the front passenger seat of the truck, holding a black gun, and Miles was in the back passenger seat. Boyd knew both men, who had played baseball with his younger brother. Boyd did not see Miles holding a gun, nor did he see the driver of the truck. He heard gunshots and his car window shatter before he lost consciousness. Boyd was shot in the temple and neck. Jackson was shot in the leg.

At around 8:30 p.m. on the day of the shooting, Francis sent a text message to his cousin, which stated " 'check to see if he's dead for me,' " and Francis's cousin responded that she would.

In the aftermath of the shooting, Boyd did not initially tell the police what he remembered about the incident because he was afraid for his family. However, in June 2010, he reported that Francis was the shooter. Boyd identified Francis from a six-pack photo lineup, but he was afraid about retaliation against his family and did not want to testify. At trial, Boyd testified that Francis and Miles were both in the courtroom and ultimately identified Francis from his photograph.

Forensic evidence offered at trial showed that eight gunshots were fired at Boyd's car from a vehicle that passed on the driver's side, leaving seven bullet holes in the car. Three shots were fired when the shooter's car was slightly behind Boyd's car, one or two were fired when the cars were next to each other, and the shooter fired his gun three more times as his vehicle moved ahead of Boyd's car. A nearby gunshot recording device indicated that the shots were fired in rapid succession.

***Findings of Law***

The resentencing court framed its inquiry as whether the prosecution carried its burden "to show, beyond a reasonable doubt, that the petitioner is guilty of [attempted] murder under the current state of California law." (Citing § 1172.6, subd. (d)(3).) Accordingly, the court separately addressed the elements of attempted murder, which require (1) the specific intent to kill another person, and (2) a direct but ineffective step toward killing that person.

Regarding specific intent, the court made two material findings. First, Francis's conduct during the incident supports an inference that he harbored express malice. (Citing, e.g. *People v. Smith* (2005) 37 Cal.4th 733, 741–742 (*Smith*).) Specifically, Francis shot at Boyd and Jackson "at point blank range," and hit them both, causing injury. He aimed his gun directly at both victims and fired eight shots into their vehicle, as his vehicle drove past them in their stopped car. Second, "in addition to proving express malice," the prosecution proved Francis's intent to kill Jackson with evidence that he created a "kill zone," and that Jackson was in that kill zone when she was shot. (Citing *People v. Canizales* (2019) 7 Cal.5th 591, 607 (*Canizales*).)

Regarding the other element of attempted murder, the court found the prosecution proved that Francis committed an act in furtherance of his intent to kill: "Clearly, by actually shooting both victims, the defendant committed an act in furtherance of his intent to kill."

In light of its findings that the prosecution proved Francis committed two counts of attempted murder, the court concluded that Francis is not entitled to resentencing and denied his petition.

DISCUSSION

Francis contends the order denying his petition must be reversed because the evidence does not support the trial court's finding that he is guilty of the attempted murder of Jackson. The People seek affirmance of the order on two independent grounds, contending that (1) Francis is ineligible for resentencing as a matter of law; and (2) the record supports the finding that Francis is guilty of Jackson's attempted murder under current law.

## I. Resentencing Law and Procedure

In 2018, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), which amended provisions of the Penal Code pertaining to the felony-murder rule (§ 189) and the natural and probable consequences doctrine (§ 188) in order " 'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).) Senate Bill 1437 also "created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended," by filing a petition for resentencing under section 1170.95, which was later renumbered as section 1172.6. (*People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*); see also *Lewis,* at p. 959.)

In 2021, the Legislature enacted Senate Bill No. 775 (2021–2022 Reg. Sess.), which amended section 1172.6 to allow defendants convicted of attempted murder to file resentencing petitions. (§ 1172.6, subd. (a); see *People v. Hurtado* (2023) 89 Cal.App.5th 887, 891 (*Hurtado)*.) Section 1172.6 now provides that a resentencing petition may be filed by a person previously convicted of murder pursuant to a theory under which malice is imputed to a person based solely on that person's participation in a crime, a person

convicted of "attempted murder under the natural and probable consequences doctrine," and a person convicted of manslaughter, "when all of the following conditions apply": (1) the charging document filed against the petitioner permitted the prosecution to proceed under a theory of murder under which malice is imputed to a person based solely on the person's participation in a crime, or pursuant to a theory of "attempted murder under the natural and probable consequences doctrine"; (2) the petitioner was convicted of murder, attempted murder or manslaughter following a trial or plea proceeding at which the petitioner could have been convicted of murder or attempted murder; and (3) the "petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a).)

The procedure for seeking resentencing relief "begins with the filing of a petition containing a declaration that all requirements for eligibility are met [citation], including that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to [Penal Code] Section 188 or 189 made effective January 1, 2019,' the effective date of Senate Bill 1437.' " (*Strong, supra,* 13 Cal.5th at p. 708, quoting § 1172.6, subd. (a)(3).) Upon receipt of a facially valid petition, "the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' " (*Strong*, at p. 708.) At that stage, the "court may look at the record of conviction, which will necessarily inform its 'prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless.' " (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251 (*Williams*); see *Lewis, supra*, 11 Cal.5th at p. 971.)

"If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition."

(*Strong, supra*, 13 Cal.5th at p. 708, citing § 1172.6, subd. (c).)  If, on the other hand, "the defendant has made a prima facie showing of entitlement to relief, 'the court shall issue an order to show cause.' "  (*Strong,* at p. 708, quoting § 1172.6, subd. (c).)

## II.  Francis's Prima Facie Showing

As a preliminary matter, we reject Francis's contention that the People waived the right to dispute the prima facie finding in this case by electing not to file an appeal from that ruling.  Francis fails to support his premise that the prima facie finding was an independently appealable order.  " ' "It is settled that the right of appeal is statutory and that a judgment or order is not appealable unless expressly made so by statute." ' "  (*People v. Mena* (2012) 54 Cal.4th 146, 152.)  Section 1238 lists orders and judgments that may be appealed by the People, which include an "order made after judgment, affecting the substantial rights of the people."  (§ 1238, subd. (a)(5).)  The prima facie finding that triggers an order to show cause in a section 1172.6 proceeding is a post judgment order, but it is only a preliminary ruling that does not by itself entitle the petitioner to any relief, and thus does not necessarily affect the substantial rights of the People.

Francis cites *People v. Hampton* (2022) 74 Cal.App.5th 1092 (*Hampton*), which is inapposite, as that case was an appeal by the People from an order granting a petition for resentencing.  The *Hampton* court found that an order determining that the "defendant is entitled to [resentencing] relief qualifies as '[a]n order made after judgment, affecting the substantial rights of the people,' and is appealable under section 1238, subdivision (a)(5)."  (*Id*. at p. 1101.)  *Hampton* does not hold that a prima facie finding in a resentencing proceeding is an independently appealable ruling.

Francis contends that *Hampton* is nevertheless "on point" because the *Hampton* court analogized section 1172.6 to section 1170.126, which codifies the procedure for seeking resentencing under the Three Strikes Reform Act of 2012 (the Reform Act). (*Hampton, supra,* 74 Cal.App.5th at pp. 1100–1101.) Indeed, the *Hampton* court did recognize that the two schemes share a common feature, in that the initial eligibility determination under both resentencing schemes is not just an " 'idle exercise,' " but affects the People's burden of proof going forward. (*Id.* at p. 1101, quoting *People v. Superior Court (Martinez)* (2014) 225 Cal.App.4th 979, 987 (*Martinez*).)[2] However, the *Hampton* court did not find that this burden shifting necessarily affects a substantial right of the People. Instead, the court held that it was the order granting the resentencing petition that "resulted in a substantial modification of the original judgment" and was therefore appealable under section 1238, subdivision (a)(5). (*Hampton*, at p. 1101.)

Francis offers no authority supportive of his contention that this court "should not" consider whether he made a prima facie showing to justify issuance of the order to show cause. Of course, a finding that a prima facie case has *not* been made is reviewable in an appeal from an order denying a resentencing petition. (See e.g., *Williams, supra*, 86 Cal.App.5th 1244; *People v. Harrison* (2021) 73 Cal.App.5th 429 (*Harrison*).) We see no reason why the

---

[2] *Martinez* held that an initial eligibility ruling under the Reform Act was properly challenged by the People via a writ petition because either: (1) the order was appealable, and an appeal was not an adequate remedy under the circumstances of that case; or (2) the trial court acted in excess of its jurisdiction. (*Martinez, supra*, 225 Cal.App.4th at p. 988.) *Martinez's* appealability analysis was subsequently discredited and disregarded as dicta in *People v. Montellano* (2019) 39 Cal.App.5th 148, 155–157 [holding that the preliminary eligibility ruling under the Reform Act is not directly appealable].

same should not be true of a finding that a prima facie case has been made. Such a finding is reviewable in an appeal from an order denying—or granting—a resentencing petition. After all, where a prima facie finding has been made in error, a defendant is, as a matter of law, ineligible for relief.

More difficult is the question whether Francis, in fact, made a prima facie showing that he is entitled to relief. Rulings made at the prima facie stage of a section 1172.6 resentencing proceeding are reviewed de novo. (*Williams, supra*, 86 Cal.App.5th at pp. 1251–1252; *Harrison, supra,* 73 Cal.App.5th at p. 437.) We conclude that the allegation in Francis's petition that he can no longer be found guilty of attempted murder due to changes to section 188 and 189 is refuted by his record of conviction, which shows that he was convicted as the actual attempted murderer—the person who shot the victims. Although two defendants were charged with participating in the attempted murders, the jury found only Francis guilty of those offenses, and only Francis was charged with, or found by the jury to have been, the person who personally discharged a firearm inflicting great bodily injury during the April 2010 incident.

The fact that Francis was the actual shooter makes him ineligible for resentencing relief as a matter of law because it is definitive proof that the attempted murder convictions were not based on a theory of imputed malice that was rendered invalid by amendments to section 188 and 189. (*Hurtado, supra*, 89 Cal.App.5th at p. 893 [as the "attempted murderer" petitioner was ineligible for resentencing as a matter of law]; see also *People v. Delgadillo* (2022) 14 Cal.5th 216, 233 [petitioner not entitled to relief when the "record . . . makes clear" he was the actual killer]; *People v. Harden* (2022) 81 Cal.App.5th 45, 55, 57 [affirming denial of petition at prima facie stage when

13

record of conviction "conclusively" established petitioner was the actual killer].)

The trial court recognized that Francis was convicted as the actual shooter, but it concluded that the jury's special circumstance findings were not dispositive because they did not incorporate a finding that Francis harbored the specific intent to kill. This reasoning fails to consider other relevant parts of the record of conviction, including the jury verdicts finding Francis guilty of both attempted murders and his codefendant Miles not guilty of either crime. The jury was instructed that the crime of attempted murder requires proof of two elements: "1. A direct but ineffectual act was done by one person towards killing another human being; and [¶] 2. The person committing the act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being." In finding that Francis was guilty of the attempted murders and Miles was not, the jury necessarily found that Francis was the actual shooter and that he harbored a specific intent to kill when he shot the victims.

Apparently, the trial court believed Francis might be eligible for resentencing even though he was the shooter because the jury was instructed regarding the natural and probable consequences doctrine. To be sure, the natural and probable consequences doctrine is no longer a valid theory of attempted murder liability. (§ 188, subd. (a)(3).) And the jury was instructed on natural and probable consequences as part of the aiding and abetting instructions. However, the record of conviction in this case demonstrates that Francis's convictions for the attempted murder of Boyd and Jackson were not based on the natural and probable consequences doctrine because he was not convicted on an aiding and abetting theory.

14

The jury was instructed that in order to find a defendant guilty of attempted murder as an aider and abettor under a "natural and probable consequences" theory, they had to be "satisfied beyond a reasonable doubt" that the following four facts were true: "1. The crimes of Assault with a Firearm and/or Shooting at an Occupied Motor Vehicle were committed; [¶] 2. That the defendant aided and abetted those crimes; [¶] 3. That a co-principal in that crime committed the crimes of Attempted Murder; and [¶] 4. The crime of Attempted Murder was a natural and probable consequence of the commission of the crimes of Assault with a Firearm and/or Shooting at an Occupied Motor Vehicle." Considered together, the verdicts and special circumstance findings show that the jury did not find that Francis was an aider and abettor, nor did they find that a coprincipal committed the attempted murders. Instead the jury found that Francis alone was guilty of attempted murder and of personally using a firearm to inflict great bodily injury.

Because the record of Francis's 2012 convictions shows conclusively that he is not eligible for resentencing, he did not make a prima facie showing that he was entitled to relief under section 1172.6. Thus, the court would have been justified in denying this petition at the prima facie stage. (*Lewis*, *supra*, 11 Cal.5th at p. 972.) Instead, the court issued an order to show cause based on its view that a prima facie showing had been made. Although the ensuing evidentiary hearing was unnecessary, it garnered findings that eliminate any arguable doubt regarding Francis's ineligibility for resentencing.

## III.  Francis is Guilty of the Attempted Murder of Jackson

As our background summary reflects, the trial court found that the People proved Francis is guilty of both attempted murders under current law.

15

On appeal, Francis concedes implicitly that he is guilty of Boyd's attempted murder and that he shot Jackson. But he contends that the People failed to prove the second element of attempted murder as to Jackson—that he harbored the specific intent to kill her. "While the superior court acts as an independent fact finder in determining whether the People have met their burden, on appeal, the reviewing court applies the substantial evidence standard to the superior court's findings." (*Vargas, supra,* 84 Cal.App.5th at p. 951.)

The specific intent element of attempted murder is established with proof of express malice, as these two concepts "are, in essence, 'one and the same.' " (*Smith, supra*, 37 Cal.4th at p. 739.) "Express malice requires a showing that the assailant ' " 'either desire[s] the result [i.e., death] or know[s], to a substantial certainty, that the result will occur.' " ' " (*Ibid*.) "[I]t is well settled that intent to kill or express malice, the mental state required to convict a defendant of attempted murder, may in many cases be inferred from the defendant's acts and the circumstances of the crime. [Citation.] 'There is rarely direct evidence of a defendant's intent. Such intent must usually be derived from all the circumstances of the attempt, including the defendant's actions. [Citation.] The act of firing toward a victim at a close, but not point blank, range "in a manner that could have inflicted a mortal wound had the bullet been on target is sufficient to support an inference of intent to kill. . . ." ' " (*Id*. at p. 741.) Indeed, an inference that the shooter acted with intent to kill is not necessarily foreclosed when the evidence shows that the shooter fired only once before abandoning his efforts, or that the victim escaped death due to the shooter's poor marksmanship. (*Ibid*.)

Here, the prosecution presented evidence that Francis fired not just one but eight bullets while in close range and direct proximity of two unarmed

16

victims sitting in their car. Francis fired multiple shots in rapid succession while his victims were essentially trapped in a stationary vehicle, and indeed he managed to hit them both. This evidence supports a reasonable inference that Francis acted with express malice when he shot Jackson. (*Smith, supra*, 37 Cal.4th at pp. 739, 741.) Thus, we conclude that the trial court's finding that Francis attempted to murder Jackson is supported by substantial evidence.

Francis disputes the finding of express malice, contending there is no evidence that he "knew to a substantial certainty" that Jackson's death would occur. This argument overlooks that such knowledge can be inferred from evidence of Francis's own conduct as the shooter who attacked Boyd and Jackson. We also reject Francis's contention that the trial record shows he did not know Jackson was in the car. Francis cites Jackson's trial testimony that she did not see the shooter, which does not establish that Francis did not see her. Boyd testified that he saw and recognized Francis and Miles before Francis fired a barrage of bullets at the victims, and Jackson testified that, before shots were fired, Boyd pushed her head down in an attempt to protect her. Francis would by that time have had ample opportunity to see Jackson in the passenger seat next to Boyd as the car Francis was riding in pulled up from behind Boyd's vehicle. This conclusion finds additional support in evidence that Francis's gun shots left bullet holes in the back and front panels on the driver's side of Boyd's car, shattered the back and front windows of the driver's side, and also shattered the front windshield. Substantial trial evidence shows that Francis was positioned to see both victims before and during the time when he shot them. The law does not require that Francis have had a clear view of Jackson's face to be found guilty of her attempted murder.

17

Francis also disputes the trial court's finding that Francis's intent to kill Jackson was established by evidence that Francis intended to create a "kill zone" that included Jackson. Francis argues that although his 2012 jury was instructed regarding the kill zone theory of proving specific intent, the Supreme Court has since limited the scope of this doctrine so that it no longer justifies his conviction for the attempted murder of Jackson. (Citing *Canizales*, *supra*, 7 Cal.5th at p. 602.)

Our finding that there is substantial evidence of Francis's express malice makes it unnecessary to consider his arguments about the kill zone theory, but in any event they lack merit. In its order denying the resentencing petition, the trial court provided a detailed explanation of the kill zone theory of culpability, including its current requirements as set forth in *Canizales*. *Canizales* states that in order for a jury to base a finding of specific intent on a kill zone theory, they must conclude "(1) the circumstances of the defendant's attack on a primary target, including the type and extent of force the defendant used, are such that the only reasonable inference is that the defendant intended to create a zone of fatal harm—that is, an area in which the defendant intended to kill everyone present to ensure the primary target's death—around the primary target and (2) the alleged attempted murder victim who was not the primary target was located within that zone of harm." (*Canizales*, at p. 607.)

Here, the circumstances of Francis's shooting attack show that Boyd and Jackson were seated next to each other in a stationary vehicle, and Francis was in close range of both victims when he fired his gun eight times into the vehicle. These circumstances constitute substantial evidence that Francis harbored the requisite specific intent to kill both victims "within the zone of fatal harm." (*Canizales, supra*, 7 Cal.5th at p. 607.)

18

Disputing that he intended to create a kill zone, Francis relies on cases that involved materially different facts.  (*People v. Booker* (2020) 58 Cal.App.5th 482; *People v. Cardenas* (2020) 53 Cal.App.5th 102.)  In *Booker*, the defendant fired directly at his target victim; there was no evidence he fired a "spray of bullets" or that any bullets reached the passenger side of the victim's car; and indeed the victim's passenger was not injured.  (*Booker*, at p. 500.)  Here, Francis rapidly fired multiple bullets while in close range of Boyd's car, spraying the entire left side of the car and injuring both Boyd and Jackson.  *Cardenas* involved an altercation among two groups of strangers that occurred in a restaurant parking lot.  (*Cardenas*, at p. 106.)  The appellate court found evidence the defendant had fired shots at a specific victim, which subjected "everyone near" the target to a lethal risk, but this evidence did not support a reasonable inference that the defendant intended to create a kill zone.  (*Cardenas*, at pp. 115–116.)  This case is distinguishable because Jackson was confined in a stationary vehicle sitting next to Boyd when Francis sprayed a barrage of bullets directly at them.  This evidence, which supports an inference of express malice, also supports an inference that Francis intended to create a kill zone within Boyd's car that included both Boyd and Jackson.  (See *People v. Mumin* (2023) 15 Cal.5th 176, 205–206 ["fact a defendant chose to shoot into a confined space or at a defined group in close proximity to each other strengthens the inference that the creation of a kill zone was intended"]; *People v. Bland* (2002) 28 Cal.4th 313, 330–332 ["defendant and his cohort fired a flurry of bullets at the fleeing car and thereby created a kill zone" that included passengers].)

For all these reasons, we reject Francis's contention that there is insufficient evidence to prove he intended to kill Jackson.  The trial court's findings that the prosecution proved beyond a reasonable doubt that Francis

committed two counts of attempted murder is supported by substantial evidence. These findings establish an alternative valid basis for denying the resentencing petition.

## DISPOSITION

The order denying Francis's petition for resentencing is affirmed.


TUCHER, P. J.


WE CONCUR:

FUJISAKI, J.
RODRÍGUEZ, J.


*People v. Francis* (A168321)

20